# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **Ra Horakhty Ra'el Allah,** ) | **CASE NO. 1:18 CV 872** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **v.** ) | |
| ) | **Memorandum of Opinion and Order** |
| **Child Support Enforcement Agency,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

## INTRODUCTION

*Pro se* Plaintiff Ra Horakhty Ra'el Allah filed this action under 42 U.S.C. § 1983 and 18 U.S.C. § 241 against the Lorain Child Support Enforcement Agency ("CSEA") and Lorain County, Ohio. The Complaint is composed entirely of rhetoric that renders it largely incomprehensible. Plaintiff appears to contest either the fact that he is required to pay child support, or the manner in which it is collected. He states he was denied due process because he was not given adequate notice of the legal consequences of having offspring before he was deprived of Constitutional rights. (ECF No. 1 at 8). He further states he was subjected to "IV-D enforcement remedies...against [his] will and without [his consent]." He describes CSEA as a private for profit business that collects fees for its services. He asks this Court to correct the situation, terminate the current child support collection in Case No. 97JB76074 and terminate any child support orders in place. He also seeks punitive damages and refund of child support already collected from him through CSEA.

CSEA filed a Motion to Dismiss pursuant to Federal Civil Procedure Rules 12(b)(1) and 12(b)(6). (ECF No. 6). First, CSEA contends the domestic relations exception to federal court jurisdiction applies to bar subject matter jurisdiction in this case. Second, CSEA claims it is immune from suit under the Eleventh Amendment because, although it is a county agency, it operates under the supervision of the Ohio Department of Jobs and Family Service ("ODJFS"), a state agency, and state agencies are immune from suits for damages under the Eleventh Amendment. CSEA also indicates that Plaintiff listed CSEA's address as that of the ODJFS, suggesting he intended to sue the state agency, not the county. Third, CSEA also claims the Rooker-Feldman Doctrine applies in this case to bar subject matter jurisdiction because Plaintiff's claims in this case are "inextricably intertwined" with the state court domestic relations court orders. Finally, CSEA asserts that the Plaintiff failed to state a claim upon which relief may be granted.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint. Fed.R.Civ.P. 12(b)(1). Generally, Fed.R.Civ.P. 12(b)(1) Motions fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the Defendant asserts that the allegations contained in the Complaint are insufficient on their face to invoke federal jurisdiction. If the Motion presents a facial attack, the Court must take all of the material allegations in the Complaint as true and construe them in the light most favorable to the Plaintiff. *Id.* By contrast, in a factual attack, the Defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.*; *Ohio*

*Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  A challenge to subject matter jurisdiction may be considered a factual attack when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations.   If the Motion presents a factual attack, then the Court is free to consider this extrinsic evidence and may weigh the evidence of its own jurisdiction without affording the Plaintiff the presumption of truthfulness. *Ritchie*, 15 F.3d at 598; *Rogers v. Stratton Indus., Inc*., 798 F.2d 913, 915 (6th Cir. 1986).  The Plaintiff has the burden of proving subject matter jurisdiction in order to survive a Motion to Dismiss pursuant to Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir.1990).

When deciding a Motion to Dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint.  *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).  This is essentially the same standard as that under Rule 12(b)(1) where the Defendant makes a facial attack based on subject matter jurisdiction. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d at 324 (referring to the standard of review for Rule 12(b)(1) facial attacks as similar to that employed under 12(b)(6) Motions to Dismiss).  The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and recently in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) clarified the law regarding what the Plaintiff must plead in order to survive a Motion to Dismiss under Rule 12(b)(6).  The pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78. The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*,

550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

Finally, although the Court is required to construe Plaintiff's *pro se* Complaint liberally and to hold Plaintiff's Complaint to a less stringent standard than one drafted by an attorney, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is permitted to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid Complaint if it appears that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (per curiam) *Apple*, 183 F.3d at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). Dismissal on a *sua sponte* basis is also authorized where the asserted claims lack an arguable basis in law, or if the Court lacks subject matter jurisdiction over the matter. *Id.* at 480; *see also Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).

**DISCUSSION**

CSEA presents a facial attack on subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, they have only the authority to decide cases that the Constitution and Congress have

empowered them to resolve. *Id.*

Generally speaking, the Constitution and Congress have given federal courts authority to hear a case only when diversity of citizenship exists between the parties, or when the case raises a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The first type of federal jurisdiction, diversity of citizenship, is applicable to cases of sufficient value between "citizens of different states." 28 U.S.C. § 1332(a)(1). To establish diversity of citizenship, the Plaintiff must establish that he is a citizen of one state and all of the Defendants are citizens of other states. The citizenship of a natural person equates to his domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir.1990). The second type of federal jurisdiction relies on the presence of a federal question. This type of jurisdiction arises where a "well-pleaded Complaint establishes either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

Although the Plaintiff lists his address as Louisville, Kentucky and all of the Defendants are citizens of Ohio, he has not met his burden to plead sufficient facts to establish this Court's subject matter jurisdiction based on diversity of citizenship. Diversity jurisdiction can be invoked only where the amount in controversy exceeds $75,000.00. Plaintiff does not specify an amount in controversy. As this is a necessary element for diversity jurisdiction, he cannot base subject matter jurisdiction on diversity of citizenship.

If federal jurisdiction exists in this case, it must be based on a claimed violation of federal law. In determining whether a claim arises under federal law, the Court looks only to the "well-pleaded allegations of the Complaint and ignores potential defenses" Defendant may

raise. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007).

In this case, Plaintiff asserts claims under 42 U.S.C. § 1983 and 18 U.S.C. § 241. The latter of these statutes, 18 U.S.C. § 241, is a criminal statute. It does not provide a private right of action in a civil case. *U.S. v. Oguaju*, No. 02-2485, 2003 WL 21580657, *2 (6th Cir. July 9, 2003); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir.1994). To state a claim under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). The only discernable constitutional claim Plaintiff asserts is one for denial of due process. He does not allege any facts to support this claim. Indeed, it is not clear whether he is claiming that the Lorain County Domestic Relations Court improperly imposed a child support obligation or whether he is challenging the fact that the State of Ohio utilizes CSEA to collect and process child support payments.

To the extent he is challenging the Domestic Relations Court Order itself and asking this Court to reverse that Order to relieve him of the obligation to pay support under that Order, this Court lacks subject matter jurisdiction to conduct that review or grant that relief. United States District Courts do not have jurisdiction to overturn state court decisions even if the request to reverse the state court judgment is based on an allegation that the state court's action was unconstitutional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court

based on the party's claim that the state judgment itself violates his or her federal rights. *Berry v. Schmitt* 688 F.3d 290, 298-99 (6th Cir. 2012).

The Rooker-Feldman doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a).[1] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This statute was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the United States Supreme Court. The Rooker-Feldman doctrine is based on the negative inference that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts. *Exxon Mobil Corp.*, 544 U.S. at 283-84; *Kovacic v. Cuyahoga County Dep't of Children and Family Services*, 606 F.3d 301, 308-11 (6th Cir. 2010); *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

Rooker-Feldman is a doctrine with narrow application. It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298-99. It also

---

[1] 28 U.S.C. § 1257(a) provides:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

does not address potential conflicts between federal and state court Orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion. *Berry*, 688 F.3d 299. Instead, the Rooker-Feldman doctrine applies only where a party losing his or her case in state court initiates an action in federal district court complaining of injury caused by a state court judgment itself, and seeks review and rejection of that judgment. *Berry*, 688 F.3d 298-99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). To determine whether Rooker-Feldman bars a claim, the Court must look to the "source of the injury the Plaintiff alleges in the federal Complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310. If the source of the Plaintiff's injury is the state court judgment itself, then the Rooker-Feldman doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the Plaintiff asserts an independent claim." *Id.*; *see Lawrence*, 531 F.3d at 368-69. In conducting this inquiry, the Court should also consider the Plaintiff's requested relief. *Evans v. Cordray*, No. 09-3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

To the extent Plaintiff is asking this Court to modify or terminate his support Order and stop the child support collections process, he is by necessity asking this Court to overturn the state court's judgment ordering the payment of child support and the manner in which it will be collected by CSEA. This Court lacks subject matter jurisdiction to conduct such a review of a state court judgment and grant that type of relief.

To the extent he is challenging the method Ohio has chosen to collect support, his claims may not be barred by the Rooker-Feldman doctrine; however, he fails to state a claim under 42 U.S.C. § 1983 upon which relief may be granted. The Fourteenth Amendment provides that a

state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It does not prohibit every deprivation by the government of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  It only guarantees that when a person is being deprived of a constitutionally protected liberty or property interest, he or she is afforded a process that provides notice of the deprivation and an opportunity to be heard. *Id*.

The first step in establishing a denial of due process is identifying a property interest that is constitutionally protected.  To have a property interest, a person clearly must have more than an abstract desire for it and more than a unilateral expectation of it.  He must have a legally recognized entitlement to it.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Those interests are not created by the Constitution, but instead are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source, such as state law, that supports claims of entitlement to those benefits.  *Id.*  Once a property right is established, the process that is due if a deprivation occurs is determined.  *Id.* at 541.

Here, Plaintiff appears to be claiming he has a property interest in the payment process itself.  He, however, does not cite to any authority giving him a constitutionally recognized right to pay child support in the way he deems acceptable.  Absent a constitutionally protected liberty or property interest, Plaintiff failed to state a claim for a denial of due process.

Furthermore, even if the method of payment was a constitutionally protected interest, the Fourteenth Amendment is satisfied if Plaintiff received notice reasonably calculated, under all the circumstances, to apprise a person of the pendency of an action and was provided with an opportunity to be heard. The child support order, which included the manner in which it was to be paid, was incorporated into Plaintiff's 2004 divorce decree (ECF No. 6-2 at 2). Plaintiff had sufficient notice and opportunity to be heard on this issue in the course of that litigation. He has not alleged facts suggesting how he was denied due process.

CSEA also contends the domestic relations exception to federal jurisdiction applies in this case. As an initial matter, this exception applies only to cases in which federal jurisdiction is based on diversity of citizenship, and the Plaintiff "positively sues in federal court for divorce, alimony, or child custody." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 794-98 (6th Cir. 2015). The domestic-relations exception to federal diversity jurisdiction does not apply when the parties do not ask the federal court to perform these status-related functions. *Id.*; *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992). Here, it is not clear that the exception is applicable. To the extent Plaintiff is attempting to assert state law claims seeking to modify his child support obligation utilizing diversity of citizenship as the basis for federal court jurisdiction, the exception would apply. To the extent Plaintiff is asserting federal question jurisdiction under 42 U.S.C. § 1983 for denial of due process, the exception arguably would not bar this Court's jurisdiction to consider this case.

Finally, as Lorain County noted in its Answer to the Complaint, Plaintiff did not include any allegations or claims against this Defendant. As a rule, local governments may only be sued under 42 U.S.C. § 1983 when the execution of the local government's policy or custom inflicts

the injury in question. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978); *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). Plaintiff does not include any legal claims against this Defendant and does not identify a County policy, ordinance or custom that could be construed to allege a violation of Plaintiff's constitutional rights. Plaintiff has not established this Court's subject matter jurisdiction with respect to Lorain County. *Apple*, 183 F.3d at 479.

### **CONCLUSION**

Accordingly, CSEA's Motion to Dismiss pursuant to Federal Civil Procedure Rules 12(b)(1) and 12(b)(6) (ECF No. 6) is granted. Furthermore, this Court lacks subject matter jurisdiction over the claims against Lorain County. This action is dismissed against all Defendants. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge

Dated: 8/7/18